# No. 24-1882

IN THE

# United States Court of Appeals

## FOR THE FOURTH CIRCUIT

AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF SOUTH CAROLINA,

*Plaintiff-Appellant*,

v.

BRYAN STIRLING, in his official capacity as director of the South Carolina Department of Corrections,

*Defendant-Appellee.*

On Appeal from the United States District Court
for the District of South Carolina
No. 3:24-cv-00906-JDA
Hon. Jacqueline D. Austin

## PETITION FOR REHEARING EN BANC

Allen Chaney
ACLU of South Carolina
P.O. Box 1668
Columbia, SC 29202
achaney@aclusc.org

David C. Fathi
ACLU National Prison Project
915 15th Street NW, 7th Fl.
Washington, DC 20005
dfathi@aclu.org

Emerson Sykes
ACLU
125 Broad Street, 18th Floor
New York, NY 11230
esykes@aclu.org

Corene Kendrick
ACLU National Prison Project
425 California St., Ste 700
San Francisco, CA 94104
ckendrick@aclu.org

*Attorneys for Petitioner American Civil Liberties Union*
*Foundation of South Carolina*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ............................................................... i

INTRODUCTION.............................................................................. 1

BACKGROUND ............................................................................... 3

REASONS FOR GRANTING THE PETITION ............................... 8

    I.     The Panel's decision strips First Amendment protections established by the Supreme Court and applied by this Court............................................................... 8

      A.     By applying *no scrutiny* to ACLU-SC's First Amendment claims, the Panel contravened 50 years of settled law. ............................................. 8

      B.     In finding ACLU-SC's speech to not be protected, the Panel ignored and abridged this Court's holding in *PETA* and its progeny. ................................. 11

    II.    Blanket suppression of speech about prison conditions and state executions poses exceptionally important constitutional questions. ....................................... 14

      CONCLUSION............................................................................. 17

# TABLE OF AUTHORITIES

**Cases**

*De Jonge v. Oregon,*
  299 U.S. 353 (1937).................................................................15

*Desper v. Clarke,*
  1 F.4th 236 (4th Cir. 2021) ..............................................9, 10

*Fields v. City of Phila.,*
  862 F.3d 353 (3d Cir. 2017) ..............................................8, 12

*Hanrahan v. Mohr,*
  905 F.3d 947 (6th Cir. 2018)................................................10

*Heyer v. U.S. Bureau of Prisons,*
  984 F.3d 347 (4th Cir. 2021)..............................................2, 9

*Houchins v. KQED, Inc.,*
  438 U.S. 1 (1978)..............................................................7, 8

*Kleindienst v. Mandel,*
  408 U.S. 753 (1972)...............................................................15

*Lamont v. Postmaster General of U.S.,*
  381 U.S. 301 (1965)...............................................................15

*Lumumba v. Kiser,*
  116 F.4th 269 (4th Cir. 2024) ..........................................2, 10

*Montcalm Pub. Corp. v. Beck,*
  80 F.3d 105 (4th Cir. 1996)....................................................9

*N.Y. Times v. Sullivan,*
  376 U.S. 254 (1964)...............................................................15

*Nolan v. Fitzpatrick,*
    451 F.2d 545 (1st Cir. 1971) ................................................................ 15

*O'Lone v. Shabazz,*
    482 U.S. 342 (1987) .......................................................................... 16

*Overton v. Bazzetta,*
    539 U.S. 126 (2003) ....................................................................... 9, 10

*Pell v. Procunier,*
    417 U.S. 817 (1974) ............................................................. 7, 8, 10, 13

*People for Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.,*
    60 F.4th 815 (4th Cir. 2023) ................................. 3, 8, 11, 12, 13, 14

*Procunier v. Martinez,*
    416 U.S. 396 (1974) ....................................................................... 2, 5, 9

*R.A.V. v. St. Paul,*
    505 U.S. 377 (1992) .......................................................................... 11

*Saxbe v. Washington Post Co.,*
    417 U.S. 843 (1974) .......................................................................... 7, 8

*Sharpe v. Winterville Police Dep't.,*
    59 F.4th 674 (4th Cir. 2023) ......................................................... 12, 14

*Shaw v. Murphy,*
    532 U.S. 223 (2001) ............................................................................ 9

*Thornburgh v. Abbott,*
    490 U.S. 401 (1989) ....................................................................... 5, 10

*Turner v. Safley,*
    482 U.S. 78 (1987) ............................................................. 2, 5, 8, 9, 10

*United States v. Stevens,*
    559 U.S. 460 (2010) ...................................................................... 11

*W. Watersheds Project v. Michael,*
    869 F.3d 1189 (10th Cir. 2017) ............................................ 13

*Williams v. Mitchell,*
    122 F.4th 85 (4th Cir. 2024) .................................... 11, 12, 14

*Zemel v. Rusk,*
    381 U.S. 1 (1965) ........................................................................ 14

**Other Authorities**

ABA, Standards for Criminal Justice, Treatment of Prisoners
    Standard 23-11.5 (a) commentary at 359–60 (2010) ......................... 16

**Rules**

Fed. R. App. 40 ..................................................................................... 1

Fed. R. Civ. P. 12(b)(6) .................................................................. 2, 7

Loc. R. 40 ......................................................................................... 1, 14

# INTRODUCTION

The American Civil Liberties Union Foundation of South Carolina (ACLU-SC) petitions for rehearing *en banc*. The Panel's published opinion conflicts with decisions of this Court and the Supreme Court and radically reshapes First Amendment jurisprudence in this Circuit. *See* Fed. R. App. 40(b)(2)(A), (B); *see also* Loc. R. 40. Review by the full Court is necessary to maintain conformity with decisions of the Supreme Court and of this Court, and to avoid an exceptional weakening of vital First Amendment protections.

The South Carolina Department of Corrections (SCDC) prohibits interviewing, recording, or publishing the speech of incarcerated people, "by anyone." JA6, JA58. The policy applies in full force to the many friends, family, and professionals that are regularly permitted to meet and communicate with prisoners. It prohibits a spouse from recording a prisoner singing "Happy Birthday" to their child, it prohibits a friend or religious advisor from recording a prisoner's description of horrific prison conditions, and—as was the case below—it prohibits an advocacy organization from recording and publishing a prisoner's explanation why the state should not execute him. In each application, the policy restricts conduct and expression that—until the Panel's decision—was long considered protected by the First Amendment.

1

The Panel dismissed Petitioner's facial and as-applied challenges under Fed. R. Civ. P. 12(b)(6), concluding that ACLU-SC cannot state a claim because "no First Amendment right is at stake." Op. at 12. In so ruling, the Panel altered the law in two significant ways.

*First*, the Panel substantially curtailed the First Amendment rights of persons who wish to communicate with prisoners. For decades, it has been well-settled that restrictions on communication between prisoners and non-prisoners "necessarily impinge[] on the [First Amendment] interest of each," *Procunier v. Martinez*, 416 U.S. 396, 408 (1974); that prisoners enjoy a "First Amendment right to communicate with those outside" their prison, *Heyer v. U.S. Bureau of Prisons*, 984 F.3d 347, 356 (4th Cir. 2021) ("*Heyer II*"); and that "*Turner* [*v. Safley*] supplies the controlling standard" for "free speech-claims brought by prisoners." *Lumumba v. Kiser*, 116 F.4th 269, 280 n.7 (4th Cir. 2024). By ruling that all interviews—here construed to include all real-time communications with prisoners—are categorically beyond the reach of the First Amendment, the Panel puts this Court in irreconcilable conflict with many of its own rulings and those of the Supreme Court. *See, e.g.*, *Heyer II*, 984 F.3d at 356 ("[The] ban on point-to-point calls restricts Heyer's access to the outside world" and, thus, "certainly *impinges* on his First Amendment rights").

*Second*, the Panel's decision conflicts with the Court's recent right-to-record cases. ACLU-SC's as-applied challenge asserts *its* First

Amendment right to record the conversations that SCDC allows it to have with prisoners. Prisons may have legitimate penological reasons for restricting certain recordings, but the Panel's ruling—that no such First Amendment right even exists—cannot be squared with the Court's rulings in *People for Ethical Treatment of Animals, Inc. v. N.C. Farm Bureau Fed'n, Inc.*, 60 F.4th 815, 822 (4th Cir. 2023) (hereinafter "*PETA*"), and its progeny.

Because the Panel opinion is a dramatic departure from settled precedent and has devastating consequences for core First Amendment activities, rehearing *en banc* should be granted.

## BACKGROUND

### SCDC's Policy

Unique amongst prison systems nationwide, SCDC prohibits "[p]ersonal contact interviews with any SCDC inmate . . . by anyone." JA58. The policy does not define "interview," but SCDC construes "personal contact interviews" to include all real-time communications. As a result, the policy functionally prohibits all forms of communication except written correspondence. JA60.

In practice, many people *are* allowed to communicate with individuals incarcerated at SCDC. Friends, family, religious advisors, and attorneys are allowed to converse with prisoners by phone, videoconference, and through in-person visitation on virtually any

lawful topic. But to ensure that those individuals do not later publish any speech of prisoners on any subject, SCDC categorically prohibits recording those conversations. JA100.

This is not a latent policy. Last year, SCDC enforced this policy against a lawyer who recorded a phone conversation with his client and then published his client's speech. JA60, JA66. After SCDC determined what had happened, it punished the prisoner and sent a letter to the lawyer threatening to deny him access to his client. JA66. Defendant Stirling and SCDC's spokesperson publicly defended the policy as "rooted in victims' rights" and designed to protect "victims of crimes" from "see[ing] or hear[ing]" prisoners "on the news."[1] JA60, JA62.

### ACLU of South Carolina's Claims

The ACLU of South Carolina (ACLU-SC) is a civil rights organization that litigates on behalf of prisoners and works to tell their stories in the public domain. JA47–49. As the district court found below, ACLU-SC is harmed by SCDC's policy because it prohibits ACLU-SC from engaging in specific types of prison-based advocacy. ACLU-SC brought two causes of action under the First Amendment, both seeking only injunctive and declaratory relief. JA14–16.

---

[1] Despite this supposedly inviolable interest, SCDC sometimes provides the media with recordings of private telephone calls with its most notorious prisoners. *See, e.g.*, JA69–74.

*Facial Challenge*

*First*, ACLU-SC asserted that SCDC's policy facially violates the
First Amendment because it infringes upon the free speech rights of
prisoners and non-prisoners—including their rights to speak, to receive
information from willing speakers, to record speech, and to publish
speech—and does not survive scrutiny under *Turner v. Safley*, 482 U.S.
78 (1987), or *Procunier v. Martinez*, 416 U.S. 396 (1974) *overruled on
other grounds by Thornburgh v. Abbott*, 490 U.S. 401 (1989).[2]
Specifically, ACLU-SC argued that Defendant Stirling's sole
justification for the policy—that it protects crime victims from
encountering potentially upsetting speech—is not a legitimate
"penological" justification and thus categorically fails scrutiny. JA14–
15. ACLU-SC also argued that SCDC's blanket policy—even if based on
a legitimate interest—is wildly over- and under-inclusive relative to
that interest.

---

[2] If rehearing *en banc* is granted, Petitioner will continue to press
its argument that SCDC's policy is governed by *Martinez* because it
exclusively targets speech *leaving* the prison based on its perceived
impact upon listeners beyond the prison walls. *See Thornburgh*, 490
U.S. at 413 (holding that *Martinez*, not *Turner*, governs outgoing
communications because "[t]he implications of outgoing correspondence
for prison security are of a categorically lesser magnitude than the
implications of incoming materials")

*As-Applied Challenge*

*Second*, ACLU-SC asserted that the policy violated the First Amendment as applied to its right to "receive information from willing [inmates] at SCDC, to record its interviews with those inmates, and to publish those interviews." Op. at 7 (internal quotation marks omitted). Specifically, ACLU-SC seeks to record and publish conversations with two of its incarcerated clients: Marion Bowman and Sofia Cano. For Mr. Bowman, a man facing imminent execution, ACLU-SC seeks to record and publish an interview about his experiences on death row and his plea for executive clemency. JA12–13. For Ms. Cano, a woman long denied healthcare for her gender dysphoria, ACLU-SC seeks to record and publish an interview about the experience of being transgender in SCDC and her multi-year journey toward receiving care. JA11–12.

This claim does not seek access or special accommodation from SCDC. ACLU-SC alleges that its employees are allowed to meet with and interview Mr. Bowman and Ms. Cano in person, by telephone, or by videoconference. It further alleges that it already has the capacity to record interviews by telephone or video calls and has only refrained from doing so because of the threat of retaliation under challenged policy. It alleges that the conduct prohibited by the policy (recording and publishing speech) is protected by the First Amendment.

## District Court Ruling

Below, the district court dismissed both claims for failure to state a claim under Rule 12(b)(6), FRCP, and denied ACLU-SC's motion for a preliminary injunction as to recording and broadcasting an interview with Mr. Bowman. After expedited briefing and virtual oral argument, the Panel affirmed.

## The Panel Opinion

In a published opinion, the Panel ruled that SCDC's blanket ban on interviewing, recording, or publishing the speech of incarcerated people does not even *implicate* the First Amendment. Opinion at 12 ("[N]o First Amendment right is at stake"); *see also* Op. at 13–14 (declining to apply any scrutiny to ACLU-SC's facial challenge). As grounds, the Panel concluded that ACLU-SC—notwithstanding its factual assertion that it *has* the access it needs to interview its incarcerated clients—is seeking special *access* to prisoners. After reframing Petitioner's claims in that way, the Panel concluded that ACLU-SC's facial and as-applied claims are foreclosed by *Pell v. Procunier*, 417 U.S. 817 (1974), *Saxbe v. Washington Post Co.,* 417 U.S. 843 (1974), and *Houchins v. KQED, Inc.,* 438 U.S. 1 (1978)—a trilogy of Supreme Court cases holding that "newsmen have no constitutional

right of access to prisons or their inmates beyond that afforded the general public." *Pell*, 417 U.S. at 834.[3]

## REASONS FOR GRANTING THE PETITION

Rehearing *en banc* is necessary to avoid irreconcilable conflict with law from this Court and the Supreme Court, and to prevent the erosion of exceptionally important constitutional protections.

**I.    The Panel's decision strips First Amendment protections established by the Supreme Court and applied by this Court.**

The Panel's opinion guts longstanding First Amendment protections and significantly departs from this Court's articulation of the First Amendment right to record "what there is the right for the eye to see or the ear to hear." *See PETA*, 60 F.4th at 822, 825 n.3 (quoting *Fields v. City of Phila.*, 862 F.3d 353, 359 (3d Cir. 2017)).

A.    <u>By applying *no scrutiny* to ACLU-SC's First Amendment claims, the Panel contravened 50 years of settled law.</u>

For the last half-century, it has been well-settled that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution," *Turner*, 482 U.S. at 84, and that

---

[3] Unlike the media-plaintiffs in *Pell*, *Saxbe*, and *Houchins*, ACLU-SC does not assert a "freedom of the press" claim. *Compare Pell*, 417 U.S. at 829 ("the media plaintiffs do not claim any impairment of their freedom to publish") *with* JA11–13 (explaining that the policy chills ACLU-SC's right to publish its clients' speech).

prisoners retain constitutional rights that are not "inconsistent with proper incarceration," *Overton v. Bazzetta*, 539 U.S. 126, 131 (2003). Prisoners "retain, for example, the right to be free from racial discrimination, the right to due process, and, as relevant here, certain protections of the First Amendment." *Shaw v. Murphy*, 532 U.S. 223, 228–29 (2001) (citing *Turner*) (internal citations omitted). Even associational rights, which are "among the rights least compatible with incarceration," are protected by the First Amendment. *See Overton*, 539 U.S. at 131; *see also Desper v. Clarke*, 1 F.4th 236, 242–43 (4th Cir. 2021) (applying *Turner* to prison-based freedom of association claim).

Relying on Supreme Court precedent, this Court has long held that prisoners retain a First Amendment right "to communicate with those outside" the prison, *Heyer II*, 984 F.3d at 356, and that restrictions on such communications also implicate the First Amendments rights of non-prisoners, *Montcalm Pub. Corp. v. Beck*, 80 F.3d 105, 109 (4th Cir. 1996). ("The Supreme Court has *clearly recognized* a First Amendment interest in those who wish to communicate with prison inmates." (emphasis added)). *See Martinez*, 416 U.S. at 409 (holding that censorship of prisoner correspondence with non-prisoners "works a consequential restriction on the First and Fourteenth Amendments rights of those who are not prisoners."). The Court has been equally clear that, with exception of outgoing

9

correspondence, "*Turner* supplies the controlling standard" "[f]or all other First Amendment free-speech claims brought by prisoners." *Lumumba*, 116 F.4th at 280 n.7 (citing *Turner*, 482 U.S. at 84–89 and *Thornburgh*, 490 U.S. at 409). This is consistent across other circuits. *See, e.g.*, *Hanrahan v. Mohr*, 905 F.3d 947, 954–60 (6th Cir. 2018) (analyzing "*de facto* ban on all face-to-face media interviews" with specific group of prisoners under *Turner*).

By ruling that SCDC's policy, which is unparalleled in its restriction of speech, does not even *implicate* the First Amendment, the Panel upended these settled principles and adopted an approach repeatedly rejected by the Supreme Court and this Court. *See, e.g.*, *Overton,* 539 U.S. at 132 (declining to "determine the extent to which [associational rights] survive[] incarceration" and instead applying scrutiny under *Turner*; "[w]e have taken a similar approach in previous cases, such as *Pell* [ ].*"); *Desper*, 1 F.4th at 242–43 (same).

Without *en banc* review, the Panel's opinion will create confusion in the courts of this Circuit and will create a split with our sister circuits. *Compare* Op. at 12 ("[N]o First Amendment right is at stake") *with Hanrahan*, 905 F.3d at 954–60 (applying *Turner* to "*de facto* ban on all face-to-face media interviews").

10

B.    <u>In finding ACLU-SC's speech to not be protected, the
Panel ignored and abridged this Court's holding in *PETA*
and its progeny.</u>

The first step of ACLU-SC's as-applied claim is to determine if a
non-incarcerated party's act of recording an authorized phone call or
videoconference with an incarcerated person, for the purpose of publicly
advocating for that prisoner's clemency, constitutes protected speech.
*See Williams v. Mitchell*, 122 F.4th 85, 89 (4th Cir. 2024) (holding that
the first element in analysis is to determine if the speech is protected).
Without discussion, the Panel ruled that it does not.

The Panel's failure to engage in this threshold analysis sharply
departs from precedent. *See PETA*, 60 F.4th at 822 (holding that "'From
1791 to the present,' the Supreme Court has placed only a 'few limited
areas' of speech outside the First Amendment's protections and has
never suggested 'a freedom to disregard these traditional limitations.'
[. . .] These 'historic and traditional categories long familiar to the bar'
include obscenity, defamation, fraud, incitement, and speech integral to
criminal conduct.") (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 382-83
(1992) and *United States v. Stevens*, 559 U.S. 460, 468 (2010)); *id.* at 828
(noting that none of these "categorical reason[s] to sidestep the First
Amendment" existed for the court to avoid answering the question of
whether the planned speech was protected).

Moreover, in several recent cases, this Court has held that the
First Amendment right to create and disseminate speech includes the

right to make audiovisual recordings. *See, e.g.*, *PETA*, 60 F.4th at 822,

825 n.3 ("[M]ere recording 'what there is the right for the eye to see or

the ear to hear' 'falls squarely within the First Amendment right of

access to information." (quoting *Fields v. City of Phila.*, 862 F.3d 353,

359 (3d Cir. 2017)); *see also Sharpe v. Winterville Police Dep't.*, 59 F.4th

674, 681 (4th Cir. 2023) ("[L]ivestreaming a police traffic stop is speech

protected by the First Amendment"); *Williams,* 122 F.4th at 89 ("[I]t is

uncontested that Williams engaged in protected First Amendment

activity when he recorded his initial interaction with [law

enforcement]." (emphasis added)).

Of the three, *PETA* is the most relevant here. In *PETA*, an

advocacy organization sought "to conduct undercover investigations" of

animal cruelty at farms, including by interviewing employees,

"record[ing] documents found in nonpublic areas," and "carry[ing] out

surveillance." *PETA*, 60 F.4th at 822. After considering several

arguments to the contrary, the Court concluded that there is "no doubt"

that each planned activity, including surreptitious video recording by

an undercover employee, is "speech [that] the First Amendment

protects." *Id.* at 828. Though the Court rejected the district court's

categorical ruling that "all recording is protected speech," it clearly

announced that recording "as part of newsgathering," even in

"nonpublic areas," "constitutes protected speech." *Id.* at 836; *see also id.*

at 841 ("The majority concludes that the First Amendment protects the

right to surreptitiously record in an employer's nonpublic areas as part of newsgathering.") (Rushing, J., dissenting). The Court's decision in *PETA* was no outlier; it followed the overwhelming weight of authorities across our sibling circuits. *See id.* at 836–37 (discussing approaches in other circuits).

The Panel's opinion here cannot be reconciled with *PETA*. If the First Amendment protects PETA's right to deceive an employer, gain physical access to private property, and then surreptitiously record what one observes, then it must also protect ACLU-SC's right to record conversations that *it is legally permitted to have* with its incarcerated clients. That is not to say that prisons cannot regulate audiovisual recordings—but such regulations must at least satisfy the usually deferential standards customarily applied in the prison context. *See id.* at 827 ("*Applying* the First Amendment, of course, does not necessarily translate into invalidating a statute; it only triggers the balancing inquiry.").[4]

---

[4] Again, ACLU-SC does not demand that SCDC make certain people or information available to it. It merely seeks not to be punished if it records conversations it is *already authorized to have. Cf. Pell*, 417 U.S. at 834 (rejecting argument that "the Constitution imposes upon government the affirmative duty to make available to journalists sources of information not available to members of the public generally"); *see also W. Watersheds Project v. Michael*, 869 F.3d 1189, 1197 (10th Cir. 2017) (distinguishing the First Amendment right to record one's surroundings from the Supreme Court's rejection of an

The Panel did not engage with the Court's right-to-record cases. But its silence does not diminish the impact. The Panel's opinion implicitly—but unmistakably—rules that the First Amendment does *not* protect the right to record authorized communications with prisoners. It thus reflects a significant retreat from the First Amendment principles staked out by this Court in *PETA*, *Sharpe*, and *Williams*, and triggers a jurisprudential split from the commitment other circuits have shown to the First Amendment right to record. That the Panel did not engage with *PETA* further deepens the need for *en banc* review. *See* Loc. R. 40(b)(iii) (approving rehearing *en banc* when the opinion "is in conflict with a decision of . . . this Court, . . .and the conflict is not addressed in the opinion.").

## II. Blanket suppression of speech about prison conditions and state executions poses exceptionally important constitutional questions.

The First Amendment is vital to the health of our democratic republic. As Chief Justice Hughes wisely explained, it is "imperative" for the courts "to preserve inviolate the constitutional rights of free speech, free press and free assembly in order to maintain the opportunity for free political discussion, to the end that government may be responsive to the will of the people." *De Jonge v. Oregon*, 299

---

"unrestrained right to gather information" (citing *Zemel v. Rusk*, 381 U.S. 1 (1965)).

U.S. 353, 365 (1937); *N.Y. Times v. Sullivan*, 376 U.S. 254, 301 (1964)
("We should be ever mindful of the wise counsel of Chief Justice
Hughes.") (Goldberg, J., concurring). For this reason, courts have long
treated the First Amendment as protecting both the right to speak
freely and the corresponding right to receive the speech of others. *See,
e.g.*, *Kleindienst v. Mandel*, 408 U.S. 753, 762 (1972) (holding that it is
"well established" that the First Amendment protects the "right to
receive information and ideas") (citation omitted); *Lamont v. Postmaster
General of U.S.*, 381 U.S. 301, 308 (1965) ("The dissemination of ideas
can accomplish nothing if otherwise willing addressees are not free to
receive and consider them. It would be a barren marketplace of ideas
that had only sellers and no buyers.") (Brennan, J., concurring).

With those warnings in mind, it is evident that the Panel's
unqualified embrace of SCDC's total ban on interviewing, recording, or
publishing the speech of incarcerated people has profound social and
political consequences. Nowhere is the public exchange of information
more pivotal than regarding prisons or state executions, because that is
where state power is at its zenith, and public oversight at its nadir. *See
Nolan v. Fitzpatrick*, 451 F.2d 545, 547-48 (1st Cir. 1971) ("The
argument that the prisoner has the right to communicate his grievances
to the press and, through the press, to the public is thus buttressed by
the invisibility of prisons to the press and the public: the prisoners'
right to speak is enhanced by the right of the public to hear."); *see also*

ABA, Standards for Criminal Justice, Treatment of Prisoners Standard 23-11.5 (a) commentary at 359–60 (2010) ("Affording members of the media access to correctional facilities is a means of bringing transparency and accountability into the operations of those facilities."), *available at* https://www.americanbar.org/content/dam/aba/publications/criminal_justice_standards/treatment_of_prisoners.pdf. As Justice Brennan noted,

> Prisoners are persons whom most of us would rather not think about. Banished from everyday sight, they exist in a shadow world that only dimly enters our awareness. . . . When prisoners emerge from the shadows to press a constitutional claim, they invoke no alien set of principles drawn from a distant culture. Rather, they speak the language of the charter upon which all of us rely to hold official power accountable. They ask us to acknowledge that power exercised in the shadows must be restrained at least as diligently as power that acts in the sunlight.

*O'Lone v. Shabazz*, 482 U.S. 342, 354–55 (1987) (Brennan, J., dissenting).

The consequences of the Panel's opinion are further amplified and modernized by the brief of *amicus curiae* LatinoJustice PRLDEF, which traces how publicizing the speech *of incarcerated people* has played an essential role in informing public dialogue, ensuring political accountability, and even shaping the law. *See* Am. Br. at 13 ("*Serial* is credited with . . . making millions of listeners more fundamentally aware of the limits and flaws of the justice system." (citation omitted)),

*id.* at 14–16 (crediting *Prison Radio* and its platform for Mumia Abu-Jamal with "expos[ing] the health challenges that aging people face in carceral institutions" which, in turn, "spurred reform actions outside the prison walls."), *id.* at 25–27 (crediting *Suspect* with leading to the exoneration of Leon Benson by the local prosecutor's office). By ruling that prisons may categorically forbid the ACLU-SC from sharing an incarcerated person's speech with the public for any reason (or, indeed, for *no reason*), the Panel opinion risks silencing this vital First Amendment discourse throughout the Circuit.

## CONCLUSION

The Panel's opinion changes the law regarding a matter of exceptional importance, and its reasoning cannot be reconciled with decisions of the Supreme Court and this Court. Rehearing *en banc* should be granted.

Dated:  December 27, 2024

Respectfully submitted,


[*signature blocks on following page*]

17

**ACLU OF SOUTH CAROLINA**

*/s Allen Chaney*

_____
Allen Chaney
Fed. Id. 13181
P.O. Box 1668
Columbia, SC 29202
Tel: (843) 282-7953
achaney@aclusc.org

**AMERICAN CIVIL LIBERTIES
UNION FOUNDATION**

Emerson J. Sykes
ACLU Speech, Privacy, and
Technology Project
125 Broad Street, 18th Floor
New York, NY 11230
Tel: (212) 549-2500
esykes@aclu.org/

David C. Fathi*
ACLU National Prison Project
915 15th Street NW, 7th Floor
Washington, DC 20005
Tel: (202) 393-4930
dfathi@aclu.org

Corene T. Kendrick
ACLU National Prison Project
425 California St., Ste 700
San Francisco, CA 94104
Tel: (202) 393-4930
ckendrick@aclu.org

* Not admitted in D.C., practice limited to federal courts.

## Certificate of Compliance

1. This Petition for Rehearing *En Banc* has been prepared using Microsoft Word, in Century Schoolbook font, with 14-point proportional type size.

2. The body of this Petition, exclusive of the case caption, title, tables, and signature block, contains no more than 3,900 words. Specifically, this Petition contains 3,690 words.


DATE: December 27, 2024


*/s Allen Chaney*

Allen Chaney
Counsel for Petitioner/Appellant

## Certificate of Service

I, Allen Chaney, do hereby certify that this Petition for Rehearing *En Banc* was filed on this day through the Court's Electronic Court Filing (ECF) system. Each party will be served an electronic copy of this document via email through the ECF system.

DATE: December 27, 2024

*/s Allen Chaney*

Allen Chaney
Counsel for Petitioner/Appellant